IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

AMOS FINANCIAL LLC,                    )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )
                                       )    No. 22-cv-2059-TMP
FIRST HORIZON BANK,                    )
                                       )
                                       )
        Defendant.                     )

---

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

Before the court are defendant First Horizon Bank's ("First Horizon") Motion for Judgment on the Pleadings, or in the Alternative for Partial Summary Judgment, filed on June 10, 2024, (ECF No. 85), and plaintiff Amos Financial LLC's ("Amos") Motion for Summary Judgment, filed on June 10, 2024, (ECF No. 87).[1] Both parties filed responses and replies. (ECF Nos. 94, 97, 99, 100.) For the reasons below, First Horizon's motion is GRANTED as to Counts I, II, III, IV, and VI and DENIED as to Count V, and Amos's motion is DENIED as to Counts I through VII and GRANTED as to Count VIII.

---

[1]The parties consented to having the undersigned conduct all proceedings in this case, including trial, the entry of final judgment, and all post-trial proceedings. (ECF No. 29.)

## I.    FINDINGS OF FACT

The following facts are derived from the undisputed facts in Amos's Amended Complaint, the Asset Sale Agreement ("Agreement"), the Terms of Sale Memorandum ("TOS Memo"), and both parties' statements of undisputed facts. (ECF Nos. 43, 43-1, 86, 86-2, 90, 95, 96.)

### A.    Bidding and the Asset Sale Agreement

Amos is a limited liability company duly registered in the state of Illinois with its principal place of business in Illinois. (ECF No. 43 at PageID 43.) Amos is involved in purchasing and servicing consumer and commercial loan pool portfolios, (id. at PageID 44), and is a sophisticated investor within the meaning of the regulations promulgated under the Securities Act of 1933, (ECF No. 43-1 at PageID 69). First Horizon is a corporation duly registered in the state of Tennessee with its principal place of business in Tennessee. (ECF No. 43 at PageID 43.)

In July 2020, First Horizon acquired IberiaBank, which had previously acquired Century Bank and Florida Bank.[2] (ECF No. 90.) In November 2020, First Horizon conducted an auction for a tranche of 151 loans, which was brokered by the Debt Exchange ("DebtX"). (ECF Nos. 86-2, 90.) First Horizon provided prospective bidders

---

[2]First Horizon admits this fact only for summary judgment purposes. (ECF No. 96 at PageID 2410.)

with the TOS Memo, which outlines the bidding procedures, and a Review File related to the loans. (ECF Nos. 86-2; 90 at PageID 1321-22.) Bidding was based "on the balance as of the close of business on [November 25, 2020]," and the balance was "subject to adjustment as indicated in [the Agreement]."[3] (ECF No. 86-2 at PageID 357.) The final listed value for the loans was $13,453,690.57. (ECF No. 86-1 at PageID 354.) Prior to the close of bidding, on November 30, 2020, DebtX uploaded documents for First Horizon to the Review File related to Loans 7192 and 8842,

---

[3]Section 3.2 of the Agreement provides:

> **3.2 Payment of Adjusted Purchase Price.** On the Closing Date, the Buyer shall pay to the Seller by wire transfer in immediately available funds, the amount of the Purchase Price, adjusted as follows: (i) less the Earnest Money previously received by the Seller, (ii) less all principal payments received by the Seller on account of the Loan(s) from the Calculation Date through the day before the Closing Date multiplied by the Bid Percentage, (iii) less any escrows held by the Seller relating to the Loan(s), (iv) plus, for Loan(s) that are less than sixty (60) days past due as of the Closing Date, the accrued and unpaid interest owing on such Loan(s) through the day before the Closing Date, (v) plus any protective advances made by the Seller, in its reasonable discretion between the Calculation Date and the Closing Date. The adjusted Purchase Price shall be calculated on a settlement statement prepared by the Seller and available for the Buyer's review two Business Days prior to the Closing Date.

(ECF No. 43-1 at PageID 65 (bold in original).) The Agreement further defines "Purchase Price" as "the amount bid by the Buyer for the Loan(s) as shown on the Bid Form." (Id. at PageID 80.) The Agreement does not otherwise provide a mechanism to adjust the purchase price.

including filings in bankruptcy court and emails between First
Horizon employees explaining that the remaining balances for the
loans were $5,400 and $11,086, respectively.[4] (ECF No. 90 at PageID
1326-27.)

At the close of bidding on December 3, 2020, Amos placed the
winning bid; bids were "based on a percentage of the principal
balances of the loans being sold," with Amos submitting the winning
bid at forty-one cents on the dollar, for an ultimate value of
$5,516,013.10. (ECF Nos. 43 at PageID 44; 85 at PageID 322; 86-1
at PageID 354; 87 at PageID 372; 90 at 1323.) That same day, Amos
and First Horizon signed the Agreement. (ECF Nos. 43 at PageID 44;
43-1.) Between December 3 and closing on December 14, Amos
requested that First Horizon reduce the balances for Loans 7192
and 8842; First Horizon declined to adjust the Purchase Price.
(ECF No. 90 at PageID 1327-28.) Closing occurred on December 14,
2020, with Amos paying the listed Purchase Price. (ECF No. 43 at
PageID 44.) At some point following closing, Amos discovered the
existence of bankruptcy proceedings related to several of the
loans, and it is undisputed that First Horizon did not disclose

---

[4]Amos attached the emails as exhibits to its statement of
undisputed facts. (ECF Nos. 90-47, 90-48, 90-49.)  In one email
dated November 24, 2020, Brad Hissing, a lawyer who represented
IberiaBank, informs Michael Strane, an IberiaBank employee who
later became a First Horizon employee, that the remaining balances
were $5,400 for Loan 7192 and $11,086 for Loan 8842. (ECF No. 90-
48; see also ECF No. 96 at PageID 2419 (First Horizon clarifying
Hissing and Strane's relationship with First Horizon).)

the existence of those records. Amos made several demands that First Horizon repurchase or refund the disputed loans; First Horizon declined to do so. (ECF No. 43 at PageID 47, 49, 51, 53-55.)

Concerning the Agreement, Section 3.3, titled "Conveyance," required that First Horizon, "[u]pon receipt of the Purchase Price, . . . shall sell, assign, transfer and convey the Loan(s) to [Amos] subject to and in accordance with the provisions of this Agreement."[5] (ECF No. 43-1 at PageID 66.)

Section 4.1, titled "Closing Documents" provides that:

> Not later than the Business Day prior to the Closing Date, [First Horizon] shall deliver to the Escrow Agent (i) a Bill of Sale in the form attached hereto as Attachment 1, selling, assigning, transferring and conveying to [Amos] all rights, title and interests of [First Horizon] in, to and under the Loan(s), all on the terms and conditions set forth in this Agreement; (ii) the original Note(s), or affidavits of lost Note(s), endorsed to [Amos] by allonge in the form attached hereto as Attachment 2; and (iii) assignment(s) of the Mortgage(s) in the form attached hereto as Attachment 3 (collectively, to the extent delivered to the Escrow Agent, the "Closing Documents"). The endorsements and assignments included in the Closing Documents shall be without recourse, representation or warranty of any kind or nature. Such qualifying language on the endorsements and assignments shall not affect, limit or enlarge the obligations of [First Horizon] and the rights, remedies and recourse of [Amos] under this Agreement.

---

[5]Amos does not allege that First Horizon breached Section 3.3 in its Amended Complaint, (see ECF No. 43), but does allege a breach in its motion for summary judgment, (see ECF No. 87).

(Id.) Section 4.3 further provides that "[p]romptly after the
closing, [First Horizon] shall deliver to [Amos] the entire Review
File including, without limitation, originals of each Collateral
Document to the extent originals are in [First Horizon's]
possession. (Id.)

Section 4.4, titled "Execution of Separate Loan Assignments,"
also provides that:

> At and after the closing, to the extent prepared by
> [Amos], [First Horizon] shall execute, and acknowledge
> if appropriate, for delivery to [Amos] one or more
> additional documents to the extent required by
> applicable public recording or filing laws to transfer
> to [Amos] the rights, title and interests of [First
> Horizon] in, to and under the purchased Loan(s)
> (collectively, "Separate Loan Assignments"). The
> Separate Loan Assignments shall be without recourse,
> representation or warranty of any kind or nature. Such
> qualifying language on the Separate Loan Assignments
> shall not affect, limit or enlarge the obligations of
> [First Horizon] and the rights, remedies and recourse of
> [Amos] under this Agreement. [Amos] shall prepare and
> furnish any and all further Separate Loan Assignments,
> if necessary, in form satisfactory to [First Horizon].
> [Amos] shall promptly file or record each Separate Loan
> Assignment, at its sole cost and expense.

(Id.)

In Section 5.5, titled "Decision to Purchase" Amos
represented that its:

> bid and decision to purchase the Loan(s) is based upon
> its own comprehensive review and independent expert
> evaluation and analysis of the Review File and other
> materials deemed relevant by [Amos] and its agents.
> [Amos] has read and agrees to all of the terms and
> conditions of the Terms of Sale Memorandum. [Amos] has
> made such independent investigation as [Amos] deems to
> be warranted into the nature, title, attachment,

> perfection, priority, validity, enforceability,
> collectability, and value of the Loan(s), the title,
> condition and value of any collateral securing the
> Loan(s), the market conditions and other characteristics
> of the places where any such collateral is located, and
> all other facts it deems material to the purchase of the
> Loan(s).

(Id. at PageID 69.)

In Section 5.6 of the Agreement, titled "No Reliance," Amos

also represented that:

> In entering into this Agreement and the other Sale
> Documents, [Amos] has not relied upon any oral or written
> information from [First Horizon], DebtX, or any of their
> respective employees, agents, attorneys or
> representatives, other than the limited representations
> and warranties of [First Horizon] contained herein.
> [Amos] acknowledges that no employee, agent, attorney or
> representative of [First Horizon] or DebtX has been
> authorized to make, and that [Amos] has not relied upon,
> any statements, representations or warranties other than
> those specifically contained in this Agreement.

(Id.)

In Section 6 of the Agreement, First Horizon made several

representations and warranties. Section 6 reads in relevant part:

> This sale is made without recourse against [First
> Horizon], or representation or warranty by [First
> Horizon], whether expressed, implied or imposed by law,
> of any kind or nature except as provided in Sections 6
> and 21 of this Agreement. [First Horizon] has attempted
> to provide accurate information to all prospective
> Bidders. Without limiting the generality of the
> foregoing, [First Horizon] does not represent, warrant
> or insure the accuracy or completeness of any
> information or its sources of information contained in
> the Bid Package or in the Review File, Collateral
> Documents, Note(s) or Loan(s) (whether contained in
> originals, duplicate originals, copies, or magnetic
> media, including computer tapes and disks), including
> without limitation any reports or other information

- 7 -

prepared by accountants, engineers, appraisers, environmental consultants or other professionals. [First Horizon] has not, does not and will not make any representations or warranties with respect to the collectibility [sic] of any Loan or the value or condition of the Mortgaged Property. To the extent the Loan(s) constitute personal or real property, such property is sold "as is, where is," and the Seller expressly disclaims any representations or warranties with respect to such property.

(ECF No. 43-1 at PageID 70.)

Section 6.2 of the Agreement is titled "Representations and Warranties by Seller as to the Loan(s)" and provides that: "*[e]xcept as otherwise disclosed in the Review File or in publicly available records*, [First Horizon] hereby represents and warrants that, as to the Loan(s), the following representations and warranties are true and correct in all material respects as of the date hereof." (Id. at PageID 71 (emphasis added).) The subparts of Section 6.2 then contain specific warranties and representations. Relevant here:

**6.2.2 Enforceability.** To the best of [First Horizon's] knowledge, the Note(s) and Mortgage(s) are the legal, valid and binding obligations of the Obligor thereof, enforceable against such Obligor in accordance with their terms (a) except as such enforcement may be limited by bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors rights generally and by general equity principles (regardless of whether such enforcement is considered in a proceeding in equity or at law) and (b) except particular remedies, waivers and other provisions may not be enforceable, but such unenforceability does not affect the practical realization of the intended benefits of the Mortgage(s), meaning the ability of the holder thereof to foreclose the Mortgage(s) for any payment default by the maker or obligor thereunder.

**6.2.3 No Defense by Obligor.** To the best of [First Horizon's] knowledge, the Obligor has no valid defense that prevents enforcement by the holder thereof of the provisions of the Note(s) or Mortgage(s), or realization by the holder thereof or its assigns against the Mortgaged Property that arises from applicable local, state or federal laws, regulations or other requirements pertaining to usury and any or all other requirement of any federal, state or local law including, without limitation, truth-in-lending, real estate settlement procedures, consumer credit protection, and equal credit opportunity or disclosure laws applicable to such Loan(s). To the best of [First Horizon's] knowledge, the Loan(s) are not subject to any valid right of rescission, set-off, abatement, diminution, counterclaim or defense that prevents enforcement by [First Horizon] thereof or its assigns of the provisions of the Note(s) or Mortgage(s), or realization by the Seller thereof or its assigns against the Mortgaged Property of the intended benefits of such Mortgage and no such claims have been asserted as of the date hereof with respect to such Loan.

**6.2.4 Certain Schedule Information.** The statement of the principal balances for the Loan(s) set forth in Schedule A is true and correct as of the date of calculation.

**6.2.5 No Modification.** Except by written instrument or other written documentation contained in the Review File, neither [First Horizon] nor, to the best of the [First Horizon's] knowledge, any prior holder of the Loan(s) has modified the Note(s) or Mortgage(s) or satisfied, canceled or subordinated the Note(s) or Mortgage(s) in whole or in part or released all or any material portion of the Mortgaged Property from the lien of the Mortgage(s) or executed any instrument of release, cancellation or satisfaction. The Note(s) and Mortgage(s) and any documents modifying their terms included in the Review File are true and correct copies of the documents they purport to be and have not been superseded, amended, modified, canceled or otherwise changed except as disclosed in the Review File.

**6.2.6 Review File.** With the exception of any Excluded Information, the Review File includes all material documents in the possession of [First Horizon], or copies thereof, relating to the Loan(s).

. . .

**6.2.9 Litigation.** To the best of [First Horizon's] knowledge, there is no litigation, proceeding or governmental investigation pending, or any order, injunction or decree outstanding, existing or relating to the Loan(s) or Mortgaged Property.

(Id. at PageID 71-72 (bold in original).)[6] Relating to Section 6.2.6, the Agreement defines "Review File" as

all instruments and documents, in the files of [First Horizon] pertaining to the Loan(s), including without limitation, the Note(s) and any Collateral Documents and any loan summaries prepared by DebtX or [First Horizon], but excluding any Excluded Information.

(Id. at PageID 81.) "Excluded Information" is defined as

information or documentation excluded from the Review File or redacted from documents left in the Review File relating to the Loan(s) or the Obligors including internal memoranda and officer comments, attorney-client correspondence or other information from attorneys or prepared in anticipation of litigation, personal tax returns, and any documents prepared by or for the use of [First Horizon] or DebtX regarding the valuation of the Loan(s).

(Id. at PageID 79.)

Schedule A of the Agreement lists the principal balances for the loans. The listed balances for the disputed loans are:

- Loan 9149: $83,608.06

- Loan 7267: $63,870.87

---

[6]Amos does not allege breaches of Sections 6.2.2 or 6.2.5 in its Amended Complaint, (see ECF No. 43), but it does allege breaches of those provisions in its motion for summary judgment and its response to First Horizon's motion, (see ECF Nos. 87, 97.)

- Loan 1521: $100,554.61

- Loan 4940: $34,382.04

- Loan 7192: $515,000.00

- Loan 8842: $291,884.73

- Loan 9969: $95,702.33

(Id. at PageID 82-85.)

The TOS Memo, which was provided to prospective purchasers prior to bidding, also includes similar terms as in the Agreement. The TOS Memo provides that "[s]ubmission of any Bid indicates that the Bidder accepts all of the terms and conditions of all documents referenced in this [TOS Memo], the related [Agreement], and any additional materials that may be distributed prior to the Bid Deadline (as defined herein)." (ECF No. 86-2 at PageID 356.) However, "[i]f any terms [of the TOS Memo] conflict with the terms of the [Agreement], the terms and provisions of the [Agreement] shall govern and control." (Id.) The TOS Memo goes on to provide other limitations, including that "[i]t is the Bidder's sole responsibility to perform its own due diligence and examine the Review Files to its satisfaction"; that neither First Horizon nor DebtX "make any representations or warranties with respect to the accuracy or completeness of any information presented . . . except as expressly set forth in the [Agreement]"; that "the transfer language will specifically state that the assignment is being made

without recourse to [First Horizon]" except as specifically provided in the Agreement; and that "The Assets are being sold 'AS IS' and 'WITH ALL FAULTS.'"[7] (Id. at PageID 356-60.)

## B.    Procedural Background

On March 12, 2021, Amos filed its original complaint against First Horizon in the Southern District of Florida, alleging six counts for breach of contract related to the Agreement and requesting $445,716.66 in damages. (ECF No. 1.) On January 31, 2022, United States District Judge Marcia G. Cooke granted First Horizon's motion to transfer the case to the Western District of Tennessee. (ECF No. 23.) Considering the private and public interest factors under 28 U.S.C. § 1404(a), Judge Cooke explained that, on balance, the public interest factors weighed in favor of transfer, mainly because the contract at issue is governed by Tennessee law according to its choice of law clause. (Id. at PageID 169.) After transfer, the parties consented to the jurisdiction of the undersigned on March 4, 2022. (ECF No. 29.)

## C.    Amended Complaint

On December 28, 2022, Amos filed its amended complaint. (ECF No. 43.) Amos alleges eight different counts for breach of contract

---

[7]The TOS Memo also provides that "[n]either [First Horizon], DebtX, nor any of their officers or employees make any representations or warranties with respect to the validity or enforceability of the Assets or the completeness or accuracy of any information provided by [First Horizon] to DebtX with respect to any Asset." (ECF No. 86-2 at PageID 360.)

related to the Agreement, six of those pertaining to the balances of loans and breaches of specific warranties contained in Section 6.2 of the Agreement. (Id.)

*i.  Count I*

In Count I, Amos alleges that First Horizon breached Sections 6.2.3, 6.2.4, and 6.2.6 of the Agreement with respect to Loans 7192 and 8842.[8] (Id. at PageID 45-47.) According to Amos, prior to closing on December 14, 2020, both loans "had their balances reduced in Bankruptcy Case No. 8:2013bk01919 in the U.S. Bankruptcy Court for the Middle District of Florida."[9] (Id. at PageID 46.) Amos alleges that the loans had a listed balance of $515,000.00 and $291,884.73, respectively, but that "[t]he aggregate principal balances for [Loans 7192 and 8842] could not have exceeded $16,486.00 as of the Closing Date." (Id.) According to Amos, First Horizon breached the Agreement by listing the incorrect principal balance; failing to disclose that its predecessor, IberiaBank, had accepted $150,000 from the borrower; failing to produce all material documents; and failing to disclose that the loans were subject to valid rights of set-off, diminution, and/or defense.

---

[8]The borrower for these loans was the same individual. (ECF No. 43 at PageID 46.)

[9]According to the docket for this case, final decree was entered on October 13, 2022. Final Decree, In re: Curt A Schlager, No. 8:13-BK-01919 (Bankr. M.D. Fla. Oct. 13, 2022), ECF No. 313.

(Id. at PageID 46-47.) Amos seeks $313,336.73 as a result of the alleged breach.

    *ii.  Count II*

In Count II, Amos alleges that First Horizon breached Sections 6.2.3, 6.2.4, 6.2.6, and 6.2.9 of the Agreement as to Loan 1521. (Id. at PageID 47-49.) Amos explains that the listed balance was $100,554.61, but that the loan's balance was reduced to $0 in Bankruptcy Case No. 8:2011bk22028 in Bankruptcy Court for the Middle District of Florida, when the debtor settled.[10] (Id. at PageID 47-48.) According to Amos, First Horizon breached the agreement by listing the incorrect principal balance; failing to produce all material documents; failing to disclose that the debtor had settled; representing that there was no valid defense; and failing to disclose that the loan was subject to valid rights of set-off, diminution, and/or defense; and by representing that there was no litigation. (Id. at PageID 48-49.) Amos seeks $41,227.39 as a result of the alleged breach. (Id. at PageID 49.)

    *iii. Count III*

In Count III, Amos alleges that First Horizon breached Sections 6.2.3, 6.2.4, 6.2.6, and 6.2.9 of the Agreement with

---

[10]According to the docket for this case, in 2013 the court found that all disbursements were completed and closed the estate. Order Approving Account, Discharging Trustee, Canceling Bond, and Closing Estate, In re: Kenneth Lee Brown, No. 8:11-bk-22028-KRM (Bankr. M.D. Fla. May 30, 2013), ECF No. 34.

respect to Loan 9149. (Id. at PageID 49-51.) Amos states that the listed balance was $83,608.06, but First Horizon failed to disclose that the debtor had received a discharge in Bankruptcy Case No. 1:2016bk43630 in the Eastern District of New York and that the actual balance was $0.[11] (Id. at PageID 50.) Amos alleges that First Horizon breached the Agreement by listing an incorrect principal balance; failing to produce all material documents; representing that the borrower had no valid defense; failing to disclose that the loan was subject to valid rights of set-off, diminution, and/or defense; and representing that there was no litigation. (Id. at PageID 50-51.) Amos requests $34,279.30 as a result of the alleged breach. (Id. at PageID 51.)

*iv. Count IV*

In Count IV, Amos alleges that First Horizon breached Sections 6.2.3, 6.2.6, and 6.2.9 with respect to Loan 7267. (Id. at PageID 51-53.) According to Amos, First Horizon did not disclose that both guarantors for the loan received discharges in Bankruptcy Case No. 4:2014bk50081 in the Western District of Louisiana, and that the borrower, a limited liability company, was dissolved.[12]

---

[11]According to the docket for the case, a final decree discharging the debt was entered on November 17, 2016. Order of Discharge and Final Decree, In re: Eduardo Hormaza, No. 1-16-43630-nhl, (Bankr. E.D.N.Y. Nov. 17, 2016), ECF No. 11.

[12]According to the docket for the case, a final decree was entered discharging the trustee in 2015. Final Decree, In re: Kim Wayne Smith, No. 14-50081 (Bankr. W.D. La. June 16, 2015), ECF No. 46.

- 15 -

(Id. at PageID 52.) Amos alleges that First Horizon breached the agreement by failing to disclose the existence of the bankruptcy case; failing to produce all material documents; failing to disclose that the borrower was dissolved; falsely representing that there were no valid defenses; failing to disclose that the loan is subject to valid rights of set-off, diminution, and/or defense; and representing that there was no litigation. (Id. at PageID 52-53.) Amos seeks $26,187.07 as a result of the alleged breach. (Id. at PageID 53.)

*v.   Count V*

In Count V, Amos alleges that First Horizon breached Section 6.2.4 of the Agreement with respect to Loan 9969. (Id. at PageID 53.) According to Amos, First Horizon listed the principal balance as $95,702.33, but the actual balance as contained in the payment history provided by First Horizon was $57,679.05. (Id.) Amos seeks $15,589.54 as a result of the alleged breach. (Id. at PageID 54.)

*vi.   Count VI*

In Count VI, Amos alleges that First Horizon breached Section 6.2.6 of the Agreement as to Loan 4940. (Id.) According to Amos, First Horizon failed to disclose that the borrower filed a Chapter 11 bankruptcy proceeding in Bankruptcy Case No. 1:2020bk10825 in

- 16 -

the Southern District of Alabama,[13] and the guarantor filed a Chapter 7 bankruptcy proceeding in Bankruptcy Case No. 1:2020bk 12049 also in the Southern District of Alabama,[14] and that Amos failed to produce all material documents in its possession. (Id. at PageID 54-55.) Amos seeks $14,096.63 as a result of the alleged breach. (Id. at PageID 55.)

*vii. Counts VII-VIII*

In Counts VII and VIII, Amos alleges that First Horizon failed to properly provide several closing documents as required by the Agreement. (Id. at PageID 55-62.) In Count VII, Amos alleges that First Horizon failed to sign certain allonges for promissory notes, assignments of mortgages, and loan assignments, in violation of Sections 4.1 and 4.4 of the Agreement as it relates to Loans 5536, 1334, 9928, 8415, 3798 3416, 3710, 7619, 1934, 9369, 3675, 0505, 7930, 0093, and 6419. (Id. at PageID 55-59.) Amos seeks non-specific damages, explaining that it will suffer "damages due to its inability to recover and/or collect" on the Loans. (Id. at PageID 59.) Alternatively, Amos requests specific performance. (Id.)

---

[13]According to the docket for this case, a final decree was entered in 2021. Final Decree, In re: Razzano Personal Fitness Training, LLC, No. 20-10825 (Bankr. S.D. Ala. Apr. 6, 2021), ECF No. 85.

[14]According to the docket for this case, a final decree was entered in 2021. Final Decree, In re: Richard Anthony Razzano, No. 20-12049 (Bankr. S.D. Ala. Mar. 12, 2021), ECF No. 50.

In Count VIII, Amos alleges that First Horizon failed to deliver certain collateral documents and promissory notes in breach of Sections 4.1 and 4.3 of the Agreement as it relates to Loans 5336, 1334, 9928, 3058, 9369, 5203, 4408, 0563, and 8123. (Id. at PageID 59-62.) Again, Amos alleges it will be unable to collect on those loans and will sustain damages because those documents have not been delivered, and requests specific performance as an alternative remedy. (Id. at PageID 62.)

First Horizon answered the complaint on January 31, 2023, asserting in part that the cited bankruptcy proceedings were publicly available at the time of bidding. (ECF No. 50 at PageID 100-104.)

**D.  First Horizon's Motion for Judgment on the Pleadings, or in the Alternative for Partial Summary Judgment**

On June 10, 2024, both First Horizon and Amos filed dispositive motions. (ECF Nos. 85, 87.)

*i.  First Horizon's Motion*

First Horizon moves the court for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c),[15] or

---

[15]First Horizon relies in part on the TOS Memo, which it attached as part of its Statement of Undisputed Facts filed contemporaneously with its motion, in the event the court converts the motion for judgment on the pleadings to one for summary judgment. (ECF No. 86.) First Horizon asserts the TOS Memo is central to Amos's claim and is incorporated by reference throughout the Agreement, and thus consideration of it is still appropriate under Rule 12(c). (ECF No. 85-1 at PageID 335.)

alternatively for partial summary judgment pursuant to Federal
Rule of Civil Procedure 56 as to Counts I through VI.[16] (ECF No.
85.) First Horizon's argument is straightforward: it did not breach
the specific warranties and representations in the Agreement
because those warranties were made "except as otherwise disclosed
in the Review File or in publicly available records."(ECF No. 85-
1 at PageID 328 (quoting the Agreement).) Accordingly, First
Horizon argues that it did not breach the Agreement because the
information Amos relies on was contained in publicly available
records from bankruptcy proceedings. (Id.) According to First
Horizon, judgment on the pleadings is appropriate because Amos
does not contest the validity and enforceability of the Agreement,
First Horizon did not breach the Agreement as a matter of law, and
the other material facts are not in dispute. (ECF No. 85 at PageID
323.) Alternatively, First Horizon argues it is entitled to summary
judgment because there is no dispute as to any material facts and
it is entitled to judgment as a matter of law. (Id. at PageID 323-
24.)

In support, First Horizon explains "that it is undisputed
that the [Agreement] is enforceable and controlling as to Amos's

---

[16]First Horizon explains that it is not moving for relief on Count
VII, stating that "the claims in Count VII were addressed and
resolved by Counsel." (ECF No. 85-1 at PageID 326 n.1.) However,
Amos disputes that this matter has been resolved. (ECF No. 97 at
PageID 2456.) First Horizon does not address Count VIII in any of
its filings.

Causes of Action I through VI." (ECF No. 85-1 at PageID 335.) First Horizon further contends that the TOS Memo "is central to determining the rights and obligations of the parties with respect to the Loans, and further illustrates the speciousness of Amos's claims." (Id. at PageID 336.)

Discussing Amos's Amended Complaint, First Horizon argues that it did not breach the warranties and representations contained in Sections 6.2.3, 6.2.4, 6.2.6, and 6.2.9 because the information Amos relied upon in its complaint was contained in publicly available bankruptcy records or within the Review File. (Id.) First Horizon explains that "[e]ach provision of Section 6.2 is governed by Section 6," which provides in relevant part that the "sale is made without recourse against [First Horizon], or representation or warranty by [First Horizon], whether expressed, implied or imposed by law, of any kind or nature except as provided in Section[] 6 . . . of the Agreement." (ECF Nos. 43-1 at PageID 70; 85-1 at PageID 337.) The language of Section 6.2 specifically states that the representations and warranties of Sections 6.2.3, 6.2.4, 6.2.6, and 6.2.9 "were made '[e]xcept as otherwise disclosed in the Review File or in publicly available records"; and First Horizon notes that the bankruptcy proceedings cited by Amos are all indisputably publicly available records. (ECF No. 85-1 at PageID 337-38 (citing the Agreement).) First Horizon asks the court to take judicial notice of this fact. (Id. at PageID 338.)

Regarding Count I, First Horizon argues that it did not breach the representations and warranties in Sections 6.2.3, 6.2.4, and 6.2.6 for Loans 7192 and 8842 "because documentation regarding the bankruptcies was provided to Amos before it made its bid in the Review File and were publicly available." (Id. at PageID 340.) Moreover, because the bankruptcy proceedings are public records, First Horizon argues that this clearly falls within the exceptions to the "representations and warranties as stated in Section 6.2," and "it is also undisputed that the information was contained in the Review File." (Id.)

Regarding Count II, First Horizon argues that it did not breach the representations and warranties in Sections 6.2.3, 6.2.4, 6.2.6, and 6.2.9 for Loan 1521 "because documentation regarding the bankruptcy was a publicly available court record," which Amos "found . . . on its own" after closing. (Id. at PageID 341.) As such, First Horizon argues it falls within the exceptions of Section 6.2. (Id.) Moreover, First Horizon maintains that it is "undisputed that this information as [sic] contained in the Review file."[17] (Id.)

Regarding Count III, First Horizon argues that it did not breach the representations and warranties in Sections 6.2.3, 6.2.4, 6.2.6, and 6.2.9 for Loan 9149 "because documentation

---

[17]First Horizon provides no evidentiary support that the bankruptcy was disclosed in the Review File.

regarding the bankruptcy was a publicly available court record," which Amos "acknowledges that it found . . . on its own" after closing. (Id. at PageID 341-42.) First Horizon argues that this falls within the exceptions of Section 6.2, and states that "it is undisputed that this information was also contained in the Review File."[18] (Id. at PageID 342.)

Regarding Count IV, First Horizon argues that it did not breach the representations and warranties in Sections 6.2.3, 6.2.6, and 6.2.9 for Loan 7627 "because documentation regarding the bankruptcy was a publicly available court record," which Amos "acknowledges it found . . . on its own" after closing. (Id.) First Horizon argues that this falls within the exceptions of Section 6.2, and states that "it is undisputed that this information was contained in the Review File."[19] (Id.)

Regarding Count V, First Horizon argues that it did not breach the representation and warranties in Section 6.2.4 for Loan 9969 "because the payment history documenting the correct principal balance was disclosed in the Review File," which, according to First Horizon, Amos acknowledges it found by reviewing the documents in the Review File. (Id. at Page ID 343.) As such, First

---

[18]First Horizon provides no evidentiary support that the bankruptcy was disclosed in the Review File.

[19]First Horizon provides no evidentiary support that the bankruptcy was disclosed in the Review File.

Horizon argues that the misstatement of the principal balance falls
within the exceptions of Section 6.2, which Amos admits "was
contained in the Review File."[20] (Id.)

Finally, regarding Count VI, First Horizon argues that it did
not breach the representations and warranties in Section 6.2.6 for
Loan 4940 "because documentation regarding the bankruptcies were
publicly available court records," which Amos "acknowledges that
it found . . . on its own." (Id. at PageID 343-44.) Accordingly,
First Horizon argues that this falls within the exceptions of
Section 6.2, and states that "this information was contained in
the Review File."[21] (Id. at PageID 344.)

ii.  Amos's Response and First Horizon's Reply

On July 16, 2024, Amos filed its corrected response to First
Horizon's motion, where it contests First Horizon's interpretation
of the contract.[22] (ECF No. 97.) Amos argues that First Horizon's
reliance on the TOS Memo is misplaced because the Agreement
controls where the terms of the two documents conflict; according

_____

[20]In support, First Horizon points to paragraph 81 of the Amended
Complaint, stating that the "[t]he payment history that was
provided to Amos by First Horizon for this loan lists the principal
balance for Loan 9969 as $57, 679.05." (ECF No. 43 at PageID 53.)

[21]First Horizon provides no evidentiary support that the bankruptcy
was disclosed in the Review File.

[22]Amos originally filed its response the day before on July 15,
2024. (ECF No. 93.)

- 23 -

to Amos, "nearly in every instance in which [First Horizon] cited
to the [TOS Memo] [it] omitted a material part or [it] failed to
note that there are conflicting sections in the Agreement," (Id.
at PageID 2439-40), though Amos does not specifically identify any
instances where there is conflict.[23] In discussing the Agreement,
Amos argues that the language of Section 6.2 is a "general
exculpatory clause." (Id. at PageID 2441.) Amos suggests "that the
phrase 'or in publicly available records' only applies if First
Horizon first disclosed in a Review File the actual existence of
publicly available records." (Id. at PageID 2441-42.) As such,
Amos maintains that it did not have a duty to seek out and review
publicly available records unless they were first disclosed, and
posits that First Horizon did not disclose any of the bankruptcy
filings for the loans identified in Counts II, III, IV, and VI.
(Id. at PageID 2442; see also ECF No. 93-1 at PageID 2226 (stating
Amos's position that it is not common practice "in the debt
acquisition industry for loan sales of this type for prospective
buyers to be required to seek out documentation, including publicly
available records, not referenced or identified in the Review
Files, the Data File, and any other due diligence materials
provided by a seller").) Amos provides the affidavit of its

---

[23]Amos claims that it could not discuss all the times First Horizon
relied on conflicting provisions "[d]ue to page limitations." (ECF
No. 97 at PageID 2439.)

employee Nareg Korogluyan in support. (ECF No. 93-2 at PageID 2232.)

Amos also argues that First Horizon incorrectly interprets the relationship between Section 6.2 and its subsections. (ECF No. 97 at PageID 2442-44.) According to Amos, Section 6.2 is a general exculpatory clause that conflicts with Sections 6.2.2, 6.2.3, 6.2.4, 6.2.5, 6.2.6, and 6.2.9.[24] (Id. at PageID 2442-43.) Because of this conflict, Amos argues that "the more specific clauses contained in Subsections 6.2.2, 6.2.3, 6.2.4, 6.2.5, 6.2.6, and 6.2.9 . . . are controlling over First Horizon's general exculpatory clause" under Tennessee law. (Id. at PageID 2443.) Amos also cites Copeland v. HealthSouth/Methodist Rehabilitation Hospital, 565 S.W.3d 260 (Tenn. 2018), for the proposition that exculpatory clauses must be clear and unequivocal, arguing that Section 6.2 "is vague and is contradicted by Subsections 6.2.2, 6.2.3, 6.2.4, 6.2.5, and 6.2.9," and thus not so clear and unambiguous that it should be given effect. (Id. at PageID 2443-44.) Amos also notes the contract principle that contracts should be interpreted against the drafter in arguing that Section 6.2 should be given no effect. (Id. at PageID 2444.) It cites Avantax Wealth Management, Inc. v. Marriott Hotel Services, Inc., No. 3:21-CV-00810, 2023 WL 6276727, at *7 (M.D. Tenn. Sept. 26, 2023),

---

[24]Amos does not allege breaches of Sections 6.2.2 and 6.2.5 in its Amended Complaint. (See ECF No. 43.)

aff'd, 108 F.4th 407 (6th Cir. 2024), and Highlands Physicians, Inc. v. Wellmont Health Sys., 625 S.W.3d 262, 286 (Tenn. Ct. App. Sept. 25, 2020), asking the court to consider the parties' communications and trade usage and common practices within the debt acquisition industry. (Id.)

Amos further argues that First Horizon breached the implied covenant of good faith and fair dealing, (id. at PageID 2444-52), a theory it did not assert in its complaint. Additionally, Amos disputes First Horizon's assertions that it did not perform due diligence; argues that First Horizon breached Section 6.2.6 by failing to produce certain documents; disputes First Horizon's position that Count VII has been resolved by counsel for both parties; states that it had no knowledge of the bankruptcy proceedings it cited in its complaint prior to closing as to Counts II, III, IV, and VI, or knowledge of the reduced principal prior to closing for Loan 9969 as to Count V; and argues that the lump sum amount of the bid percentage was not binding. (Id. at PageID 2452-2458.)

First Horizon replied on July 29, 2024. (ECF No. 99.) First Horizon argues that Amos mischaracterizes the Agreement. (Id. at PageID 2463.) First Horizon notes that Amos's highlighting of the subsections of Section 6.2 ignores the limitations placed on those representations and warranties by Section 6.2's express language. (Id.) First Horizon also disputes Amos's interpretation of Section

6.2, arguing that Amos's interpretation of the phrase "or publicly
available records" as requiring First Horizon to disclose those
records would improperly render that phrase as surplusage while
"render[ing] half of its operative language meaningless." (Id. at
PageID 2463-64.) Additionally, First Horizon disagrees with Amos's
categorization of Section 6.2 as a "general exculpatory clause,"
arguing that section is "neither 'general' nor an exculpatory
clause," but is rather a "clear, plain, and unambiguous limitation
as to the extent of First Horizon's representations and
warranties." (Id. at PageID 2464-65.) Finally, First Horizon
argues that Amos cannot assert a "stand alone or separate cause of
action" for breach of the implied covenant of good faith and fair
dealing, especially because Amos has not otherwise stated a valid
claim for breach of contract. (Id. at PageID 2465.)

**E.    Amos's Motion for Summary Judgment**

   *i.   Amos's Motion*

   Amos moves for summary judgment pursuant to Federal Rule of
Civil Procedure 56 as to all counts in the Amended Complaint,
arguing that First Horizon breached the implied covenant of good
faith and fair dealing;[25] breached Sections 6.2.2, 6.2.3, 6.2.4,
6.2.5, 6.2.6, and 6.2.9 of the Agreement as to Counts I through

---

[25]Amos does not allege that First Horizon breached the implied
covenant of good faith and fair dealing in its Amended Complaint.
(See ECF No. 43.)

VI;[26] and breached Sections 3.3, 4.1, 4.3, and 4.4 of the Agreement
as to Counts VII and VIII.[27] (ECF Nos. 87, 87-1.)

While Amos and First Horizon differ in their interpretation
of the Agreement, Amos argues that the terms of the Agreement are
unambiguous. (ECF No. 87-1 at PageID 378-79.) According to Amos,
First Horizon relies on general provisions of the Agreement, but
it has breached the specific subsections of the Agreement that
Amos argues are controlling. (Id. at PageID 379.) Amos further
explains that, as a corporation, First Horizon has imputed
knowledge from its officers and agents. (Id. at PageID 379-80.)

In support of its allegations that First Horizon breached the
covenant of good faith and fair dealing, Amos alleges that its
"reasonable expectations were not met as a result of incorrect,
untrue, and incomplete information provided by First Horizon."
(Id. at PageID 381.) According to Amos, First Horizon breached the
covenant by "refus[ing] to take corrective action." (Id.) Amos
does not provide any evidence that First Horizon intentionally
withheld the existence of the bankruptcy proceedings in Counts II,
III, IV, or VI prior to closing.

---

[26]Amos does not allege that First Horizon breached Sections 6.2.2
and 6.2.5 in its Amended Complaint. (See ECF No. 43.)

[27]Amos does not allege that First Horizon breached Section 3.3 in
its Amended Complaint. (See ECF No. 43.)

Amos organizes its motion for summary judgment based on First Horizon's alleged breaches of specific sections of the Agreement (rather than by Count). First, Amos alleges First Horizon breached Section 6.2.4 of the Agreement as to Counts I through V by providing incorrect balances in the review file that were subsequently contradicted by various filings in bankruptcy proceedings and documents subsequently produced by First Horizon.[28] (Id. at PageID 381-88.) As to the relevant loans, Amos identifies the following discrepancies:

| Loan Number | Listed Balance | Actual Balance | Difference |
|---|---|---|---|
| 7192 | $291,884.73 | $5,400 | $286,484.73 |
| 8842 | $515,000.00 | $11,086.00 | $503,914.00 |
| 1521 | $100,554.61 | $0.00 | $100,554.61 |
| 9149 | $83,608.06 | $0.00 | $83,608.06 |
| 7267 | $63,870.87 | $0.00 | $63,870.87 |
| 9969 | $95,702.33 | $57,679.05 | $38.023.28 |

(Id. (court-created chart based on Amos's brief).)

Second, Amos alleges that First Horizon breached Section 6.2.6 of the Agreement by failing to provide certain documents

---

[28]Amos identifies these documents as: (1) the Loan Histories; (2) "a Data File identified as 'FHB Iberia DebtX Update (11.25.20) (151 loans)'"; (3) "SCHEDULE A - LOANS of the ASSET SALE AGREEMENT"; and (4) "the Closing Statement." (ECF No. 87-1 at PageID 381-82.) It appears that the documents identified by Amos are all publicly-available records from bankruptcy proceedings.

with respect to the loans in Counts I, II, III, IV, and VI. (Id. at PageID 388-390.) Amos identifies several documents filed in the various bankruptcy cases that it alleges were withheld and only produced in response to discovery, as well as a December 23, 2014 correspondence from Dean T. Little ("Little Correspondence"), an officer for Florida Bank, discussing the proceedings in In re: Kenneth Lee Brown, No. 8:11-bk-22028-KRM (Bankr. M.D. Fla. May 30, 2013), which Amos attached as an exhibit to its Statement of Undisputed Material Facts in Support of Motion for Summary Judgment.[29] (ECF Nos. 87-1 at PageID 389; 90-24 at PageID 1915.)

Third, Amos alleges that First Horizon breached Sections 6.2.2, 6.2.3, and 6.2.5 of the Agreement as to the loans identified in Counts I, II, III, IV, and VI.[30] (ECF No. 87-1 at PageID 390-92.) As to Count I, Amos alleges that First Horizon breached Sections 6.2.2 and 6.2.3 for Loans 7192 and 8842 by stating incorrect principal balances and accepting payment on those balances when the bankruptcy proceedings rendered those loans unenforceable and provided valid defenses to enforcement. (Id. at PageID 392.) As to Count II, Amos argues that First Horizon breached Sections 6.2.2, 6.2.3, and 6.2.5 for Loan 1521 because

---

[29]Amos also included the other documents it alleges First Horizon withheld. (See ECF Nos. 90-29, 90-30, 90-32, 90-33, 90-38, 90-39, 90-53, 90-54, 90-55.)

[30]Amos does not allege that First Horizon breached Sections 6.2.2 and 6.2.5 in its Amended Complaint. (See ECF No. 43.)

the debt was discharged in bankruptcy proceedings, First Horizon's
predecessor settled with the borrower, and that loan was modified.
(Id.) As to Count III, Amos alleges that First Horizon breached
Sections 6.2.2, 6.2.3, and 6.2.5 for Loan 9149 because the debt
was discharged in bankruptcy proceedings, First Horizon's
predecessor settled with the borrower, and that loan was modified.
(Id.) As to Count IV, Amos asserts that First Horizon breached
Section 6.2.3 for Loan 7267 because the guarantors for the loan
received a discharge and the borrower was dissolved, providing a
valid defense to enforcement. (Id.) As to Count VI, Amos alleges
that First Horizon breached Section 6.2.3 for Loan 4940 because
the borrower and guarantor both filed for bankruptcy, providing
valid defenses to enforcement. (Id.)

Fourth, Amos alleges that First Horizon breached Section
6.2.9 of the Agreement by failing to inform Amos that there were
bankruptcy proceedings for the loans identified in Counts II, III,
IV, and VI. (Id. at PageID 393-94.) As to Count VI, Amos alleges
that First Horizon did not provide specific documents it filed in
those proceedings in its Review File. (Id.)

Finally, Amos contends that First Horizon breached Sections
3.3, 4.1, 4.3, and 4.4 as to the loans identified in Counts VII
and VIII by failing to provide certain documents after closing.
(Id. at PageID 394.)

*ii.  First Horizon's Response and Amos's Reply*

On July 15, 2024, First Horizon filed its response in opposition, where it maintains its position that the case turns on whether bankruptcy proceedings are "publicly available records." (ECF No. 94.) First Horizon agrees with Amos that the Agreement is unambiguous, but that the unambiguity favors First Horizon. (Id. at PageID 2297-98.) First Horizon argues that Amos's arguments about imputation of knowledge are misplaced because First Horizon is not claiming lack of knowledge as a defense. (Id. at PageID 2298-99.) According to First Horizon, the Agreement "explicitly and clearly states that First Horizon did not need to undertake the effort and expense to locate every single last record and produce them to Amos, as the 151 loans were being purchased for 41 percent of their principal balance of $13,453,690.57." (Id. at PageID 2299 (citing Section 6.2 of the Agreement).) First Horizon further maintains that the Agreement and the TOS Memo "were both template agreements utilized by DebtX" and were not drafted by First Horizon, and that "the auction company understood that entities selling hundreds of loans in a sale could not reasonably be expected to warranty that all information provided was complete, accurate and correct." (Id.) First Horizon argues that Amos's reliance on imputed knowledge is thus irrelevant, and maintains that none of Amos's cited cases are on point. (Id. at PageID 2300.)

First Horizon further argues that Amos is not entitled to summary judgment on claims not asserted in its Amended Complaint, including breach of Tennessee's implied covenant of good faith and fair dealing and breaches of Sections 3.3, 6.2.2, and 6.2.5 of the Agreement. (Id.) First Horizon asserts that it did not breach the implied covenant of good faith and fair dealing, quoting Wallace v. National Bank of Commerce for the proposition that "good faith in performance is measured by the terms of the contract," 938 S.W.2d 684, 686 (Tenn. 1996), and noting that Section 6 of the Agreement explicitly provides that the sale of the loans was "made without recourse against [First Horizon]" except as specifically provided in Sections 6 and 21.[31] (ECF No. 94 at PageID 2301.)

Moreover, First Horizon notes that Sections 6.2.3 and 6.2.9 are further limited by the language of "[t]o the best of the Seller's knowledge," which First Horizon argues requires a heightened showing of knowledge of falsity.[32] (Id. at PageID 2303-04.) Finally, First Horizon makes the blanket assertion that the

---

[31]Neither party argues that Section 21 applies here.

[32]First Horizon urges the court to follow the Sixth Circuit's approach in White Consolidated Industries v. Westinghouse Electric Corporation, 179 F.3d 403 (6th Cir. 1999). There, the Sixth Circuit interpreted the language "to the best of [the seller's] knowledge and belief" as "requir[ing] more than a mere showing that [the seller] should have known . . . that liability might result" from the occurrence of an event based on that event alone, rejecting the plaintiff's argument that the agreement imposed a constructive knowledge requirement. Id. at 408-09.

documents it is alleged to have withheld from the Review File fall within the definition of "Excluded Information" because they are "attorney-client communications and internal memoranda and communications," which First Horizon notes could still "be found in publicly available bankruptcy court records." (Id. at PageID 2305.) However, First Horizon does not discuss the specific documents at issue.

Lastly, First Horizon argues that Amos ignored the duties the Agreement placed on it to "conduct its own due diligence." (Id.) First Horizon highlights Section 5.5 of the Agreement, where Amos certified that its decision to bid and purchase the loans was "based upon its own comprehensive review and independent expert evaluation and analysis of the Review File and other materials deemed relevant by [Amos] and its agents," and that Amos "ha[d] made such independent investigation as [it] deem[ed] to be warranted." (Id. (quoting Section 5.5 of the Agreement).)

Amos replied on July 29, 2024. (ECF No. 100.) First, Amos argues that a breach of the implied covenant of good faith and fair dealing is not an independent claim for relief, but is an element of a breach of contract that Amos may invoke to explain its breach of contract action. (Id. at PageID 2467.) According to Amos, Federal Rule of Civil Procedure 8(a)(2) does not require it to include "every legal theory for the breach of contract causes of action in Counts I – VI," and that First Horizon was thus

"clearly on notice of this breach of contract cause of action." (Id. at PageID 2468.)

Amos also argues that any ambiguities in the contract should be construed against First Horizon because DebtX was its agent. (Id.) Amos then argues that the "exculpatory clause" contained in Section 6.2 "except as disclosed in the Review File" only applies to Section 6.2.5. (Id. at PageID 2469.) According to Amos, Section 6.2 of the Agreement "does not state that it applies to each of Sections 6.2.1 through 6.2.9," and that the "except as disclosed in the Review File" language only appears again in Section 6.2.5.[33] (Id. at PageID 2469-70.) According to Amos, the omission of this qualifying language from all the subsections of Section 6.2 "must be interpreted as intentional," and that this language does not control as to Count I. (Id. at PageID 2470.)

Amos also reiterates its argument that First Horizon had actual and constructive knowledge for the actions taken by IberiaBank prior to its merger with First Horizon, and that First Horizon cannot argue otherwise. (Id. at PageID 2470-72.) Amos further highlights that First Horizon made filings in bankruptcy proceedings as to Loan 4940 in Count VI following its merger with

_____

[33]As discussed above, Amos only alleges a breach of Section 6.2.5 in its motion for summary judgment and not in its Amended Complaint. (See ECF Nos. 43, 87.)

IberiaBank and prior to execution of the Agreement. (Id. at PageID
2472.)

Amos also disputes First Horizon's argument that "the First
Amended Complaint itself states that documents evidencing the
correct value were provided prior to closing" as to Counts II
through VI, providing sworn testimony that it was not provided the
correct balances prior to bidding or closing. (Id. (quoting ECF
No. 94 at PageID 2296); ECF No. 93-2 at PageID 2231.) Amos further
disputes First Horizon's interpretation of the Agreement as not
requiring it to undertake extensive efforts to locate every
document, pointing to Sections 6.2.2, 6.2.3, 6.2.4, 6.2.5, 6.2.6,
and 6.2.9. (ECF No. 100 at PageID 2473.) Finally, Amos argues that
it was not on notice of the bankruptcy proceedings involved in
Counts II, III, IV, and VI prior to bidding or closing. (Id.)

## II.   CONCLUSIONS OF LAW

**A.   Legal Standard**

*i.   Judgment on the Pleadings*

"After the pleadings are closed—but early enough not to delay
trial—a party may move for judgment on the pleadings." Fed. R.
Civ. P. 12(c). "The standard of review for a motion for judgment
on the pleadings under Federal Rule of Civil Procedure 12(c) is
the same as the standard for a motion to dismiss under Federal
Rule of Civil Procedure 12(b)(6)." Rose v. Cent. USA Wireless,
LLC, No. 17-cv-2673-SHM-tmp, 2018 WL 2656767, at *3 (W.D. Tenn.

June 4, 2018) (citing Monroe Retail, Inc. v. RBS Citizens, N.A., 589 F.3d 274, 279 (6th Cir. 2009)). However, "[a]ssessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings." Gavitt v. Born, 835 F.3d 623, 640 (6th Cir. 2016) (citing Wysocki v. Int'l Bus. Mach. Corp., 607 F.3d 1102, 1104 (6th Cir. 2010)). "If a court does consider material outside the pleadings, the motion to dismiss must be treated as a motion for summary judgment under [Federal Rule of Civil Procedure] 56 and all parties must be given a reasonable opportunity to present all material pertinent to the motion." Id. (citing Wysocki, 607 F.3d at 1104); see also Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

"When ruling on a defendant's motion to dismiss on the pleadings, a district court 'must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief.'" Kottmyer v. Maas, 436 F.3d 684, 689 (6th Cir. 2006) (quoting Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 512 (6th Cir. 2001)). "To survive a Rule 12(c) motion, the 'complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on
its face.'" Engler v. Arnold, 862 F.3d 571, 575 (6th Cir. 2017)
(quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A motion
for judgment on the pleadings "should be granted when there is no
material issue of fact and the moving party is entitled to judgment
as a matter of law." Guy v. Spader Freight Servs., No. 17-2038,
2017 WL 6939377, at *2 (6th Cir. Oct. 18, 2017).

   "However, a court may consider exhibits attached to the
complaint, public records, items appearing in the record of the
case, and exhibits attached to defendant's motion to dismiss, so
long as they are referred to in the complaint and are central to
the claims contained therein, without converting the motion to one
for summary judgment." Gavitt, 835 F.3d at 640 (citing Kreipke v.
Wayne State Univ., 807 F.3d 768, 774 (6th Cir. 2015); Bassett v.
NCAA, 528 F.3d 426, 430 (6th Cir. 2008)).

   *ii.  Summary Judgment*

   Pursuant to Federal Rule of Civil Procedure 56(a), "the court
shall grant summary judgment if the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled
to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine
dispute of material fact exists "if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The
moving party bears the initial burden to "demonstrate the absence

- 38 -

of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991). Rule 56(c) provides that a party must support an assertion of fact by citing to materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials[,]" or a party must show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B).

When analyzing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. Huckaby v. Priest, 636 F.3d 211, 216 (6th Cir. 2011) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). In doing so, the court may not make credibility determinations or weigh the evidence. Jordan v. Kohl's Dep't Stores, Inc., 490 F. App'x 738, 741 (6th Cir. 2012) (citing Anderson, 477 U.S. at 255). Rather, it must decide "whether the evidence presents a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law." Block v. Meharry Med. Coll., 723 F. App'x 273, 277 (6th Cir. 2018) (quoting Anderson, 477 U.S. at 251-52).

**B.    Jurisdiction, Venue, and Applicable Law**

According to the Amended Complaint, the court has jurisdiction in this matter based on diversity of citizenship pursuant to 28 U.S.C. § 1332 because both parties are diverse and the amount in controversy exceeds $75,000. Amos is a limited liability company duly organized under the laws of Illinois with its principal place of business therein, and is thus a citizen of Illinois. See id. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ."). First Horizon is a corporation duly registered in the state of Tennessee with its principal place of business therein, and is thus a citizen of Tennessee. See id. In its Amended Complaint, Amos demands $445,716.66, exceeding the jurisdictional amount. See id. §1332(a). Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because First Horizon resides in Memphis, Tennessee. (See ECF No. 14 ("First Horizon is a Tennessee resident with its principal place of business located in Memphis, Tennessee.").)

"A federal court sitting in diversity applies the choice of law provisions of the forum state." Solo v. United Parcel Serv.

- 40 -

Co., 819 F.3d 788, 794 (6th Cir. 2016). "Tennessee adheres to the rule of *lex loci contractus*, which presumes that a contract is 'to be governed by the law of the jurisdiction in which it was executed absent a contrary intent.'" Porter v. AAR Aircraft Servs., Inc., 790 F. App'x 708, 712 (6th Cir. Oct. 24, 2019) (quoting Se. Tex. Inns, Inc. v. Prime Hosp. Corp., 462 F.3d 666, 672 n.8 (6th Cir. 2006)). Though neither party addresses where the contract was executed, the Agreement contains a choice-of-law provision stating that the Agreement "shall be governed by and construed and enforced in accordance with the laws of the state of [First Horizon's] incorporation or organization," (ECF No. 43-1 at PageID 75), which is Tennessee.[34] In her order of transfer, Judge Cooke found "that the parties [] agreed to apply Tennessee law," (ECF No. 23 at PageID 166 n.1), and neither party otherwise disputes that Tennessee law applies. As such, the court finds that the choice-of-law provision is enforceable and that Tennessee law applies to this case.

---

[34]Tennessee generally enforces a choice-of-law provision so long as it is "executed in good faith, the chosen jurisdiction [bears] a material connection to the transaction, the basis for the choice of jurisdiction [is] reasonable and not a sham, and, finally, the choice of the jurisdiction [is not] contrary to the fundamental policy of a state having a materially greater interest and whose law would otherwise govern." Se. Tex. Inns, 462 F.3d at 672 n.8 (citing Vantage Tech., LLC v. Cross, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999); Thomas v. Lytle, 104 F. Supp. 2d 906, 926–27 (M.D. Tenn. 2000), aff'd, 52 F. App'x 671 (6th Cir. 2002)). These factors weigh in favor of applying Tennessee law here.

## C.   Contract Interpretation

Under Tennessee law, contract interpretation is a question of law for the court to decide. BSG, LLC v. Check Velocity, Inc., 395 S.W.3d 90, 92 (Tenn. 2012). "A cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties." Allstate Ins. Co. v. Watson, 195 S.W.3d 609, 611 (Tenn. 2006). The plain meaning of a contract's text as written is the best evidence of the parties' intent, id., "and the language used is taken in its 'plain, ordinary, and popular sense.'" Maggart v. Almany Realtors, Inc., 259 S.W.3d 700, 704 (Tenn. 2008) (quoting Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc., 521 S.W.2d 578, 580 (Tenn. 1975); Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885, 890 (Tenn. 2002)). To determine a contract's plain meaning, its provisions "must be read together to give meaning to the document as a whole." Id. at 705. "The interpretation should be one that gives reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect." Id. at 704 (citing Davidson v. Davidson, 916 S.W.2d 918, 922–23 (Tenn. Ct. App. 1995)); see also Hyatt v. Adenus Group, LLC, 656 S.W.3d 349, 373 (Tenn. Ct. App. 2022) (citing Maggart, 259 S.W.3d at 704) ("Tennessee law generally provides that contracts should not be interpreted in ways that render portions meaningless.").

An important aspect of this principle is that when a contract has "both general and special provisions relating to the same thing, the special provisions control. Thus, where there is uncertainty between general and specific provisions, the specific provisions ordinarily qualify the meaning of the general provisions, although this is not universally or necessarily so." Cocke Cnty. Bd. of Highway Comm'rs v. Newport Utilities Bd., 690 S.W.2d 231, 237 (Tenn. 1985); see also Advanced Concrete Tools, Inc. v. Beach, No. 3:10-CV-1139, 2014 WL 1385868, at *20 (M.D. Tenn. Apr. 9, 2014) ("When a contract contains both general and specific provisions relating to the same thing, the specific provisions control." (internal quotations and citations omitted)).

Under certain circumstances, Tennessee permits courts to consider evidence beyond the four corners of a contract, such as evidence about pre-contract negotiations or evidence about the parties' subsequent conduct, in determining the contract's meaning. See Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc., 566 S.W.3d 671, 698 (Tenn. 2019) ("[E]xtrinsic evidence may be used to put the written terms of the contract into context, but it may not be used to vary, contradict, or supplement the contractual terms in violation of the parol evidence rule."). However, such evidence may only be appropriately considered "if ambiguity remains after reviewing the contract's plain language." Spec's Family Partners, Ltd. v. First Data Merch.

Servs. LLC, 777 F. App'x 785, 789 (6th Cir. 2019) (quoting Planters

Gin, 78 S.W.3d at 890). "A strained construction may not be placed

on the language used to find ambiguity where none exists." Lammert

v. Auto-Owners (Mut.) Ins. Co., 572 S.W.3d 170, 173 (Tenn. 2019)

(quoting Farmers-Peoples Bank v. Clemmer, 519 S.W.2d 801, 805

(Tenn. 1975)).

**D.    Summary Judgment**

As an initial matter, because the court considers materials

outside of the pleadings, namely the exhibits attached to Amos's

motion for summary judgment and its response to First Horizon's

motion, the court treats First Horizon's motion as one for partial

summary judgment under Rule 56. Both parties have had a reasonable

opportunity to present all relevant materials.

Both Amos and First Horizon move for summary judgment as to

the loans in Counts I through VI. Amos alleges that First Horizon

breached Sections 6.2.3, 6.2.4, 6.2.6, and 6.2.9 of the

Agreement.[35] (ECF No. 43.) To prevail on a breach of contract

action, Amos "must prove the existence of a valid and enforceable

contract, a deficiency in the performance amounting to a breach,

and damages caused by the breach." Fed. Ins. Co. v. Winters, 354

---

[35]As discussed below, because the court finds that Amos did not
allege breaches of Sections 6.2.2 and 6.2.5 and the implied
covenant of good faith and fair dealing in its complaint, the court
finds that those allegations have not been properly pleaded, and
therefore are not before the court.

S.W.3d 287, 291 (Tenn. 2011) (citing <u>ARC LifeMed, Inc. v. AMC-</u>
<u>Tenn., Inc.</u>, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). "In addition
to the explicit terms, contracts may be accompanied by implied
duties, which can result in a breach." <u>Id.</u> (citing <u>Aetna Cas. &</u>
<u>Sur. Co. v. Gilreath</u>, 625 S.W.2d 269, 275 (Tenn. 1981); <u>German v.</u>
<u>Ford</u>, 300 S.W.3d 692, 708-09 (Tenn. Ct. App. 2009)).

Here, the court finds that the validity and enforceability of
the Agreement are not in dispute. (<u>See</u> ECF No. 85-1 at PageID 335
("There is not a single reference in the [Amended Complaint] to
the unenforceability of the [Agreement].").) Furthermore, it is
mostly undisputed that several of the listed balances in the
Agreement did not match the actual balances as otherwise disclosed
in the Review File or in publicly available records,[36] that First
Horizon did not disclose the existence of the specific bankruptcy
proceedings at issue in this complaint except as to Count I, or
that bankruptcy proceedings are public records. Thus, the court
must determine whether First Horizon's actions constituted a
breach of the Agreement as a matter of law.

---

[36]As discussed below regarding Count V, Amos explains in its
response to First Horizon's motion that First Horizon received a
$45,000 payment on Loan 9969 in Count V on December 4, 2020, and
amended the balance from $95,702.33 to $57,679.05. (ECF No. 93-1
at PageID 2224-25.) However, that payment was then returned for
insufficient funds on or before December 14, 2020, and First
Horizon amended the principal balance back to $95,702.33. (<u>Id.</u> at
PageID 2225.) There is thus a genuine dispute of material fact
only as to Count V as to whether the listed principal balance for
that loan was correct or incorrect.

Resolution of this case necessarily turns on the meaning of Section 6.2 and its relevant subsections, and the relationship between those provisions.

*i.  Meaning of Section 6.2*

Both parties ostensibly agree that the language of the Agreement is unambiguous, but they disagree as to how the provisions contained within Section 6.2 relate to one another. First, Section 6 of the Agreement contains the specific representations and warranties First Horizon made as to the sale of the loans. Section 6, titled "Seller's Representations, Warranties and Recourse" reads in whole:

> This sale is made without recourse against the Seller, or representation or warranty by the Seller, whether expressed, implied or imposed by law, of any kind or nature except as provided in Sections 6 and 21 of this Agreement. The Seller has attempted to provide accurate information to all prospective Bidders. Without limiting the generality of the foregoing, the Seller does not represent, warrant or insure the accuracy or completeness of any information or its sources of information contained in the Bid Package or in the Review File, Collateral Documents, Note(s) or Loan(s) (whether contained in originals, duplicate originals, copies, or magnetic media, including computer tapes and disks), including without limitation any reports or other information prepared by accountants, engineers, appraisers, environmental consultants or other professionals. The Seller has not, does not and will not make any representations or warranties with respect to the collectability [sic] of any Loan or the value or condition of the Mortgaged Property. To the extent the Loan(s) constitute personal or real property, such property is sold "as is, where is," and the Seller expressly disclaims any representations or warranties with respect to such property.

(ECF No. 43-1 at PageID 70.)

Section 6.2 then contains the specific representations and warranties as to the loans, and the relevant portions read as follows:

**6.2 Representations and Warranties by Seller as to the Loan(s).** Except as otherwise disclosed in the Review File or in publicly available records, the Seller hereby represents and warrants that, as to the Loan(s), the following representations and warranties are true and correct in all material respects as of the date hereof.

. . .

**6.2.3 No Defense by Obligor.** To the best of the Seller's knowledge, the Obligor has no valid defense that prevents enforcement by the holder thereof of the provisions of the Note(s) or Mortgage(s), or realization by the holder thereof or its assigns against the Mortgaged Property that arises from applicable local, state or federal laws, regulations or other requirements pertaining to usury and any or all other requirement of any federal, state or local law including, without limitation, truth-in-lending, real estate settlement procedures, consumer credit protection, and equal credit opportunity or disclosure laws applicable to such Loan(s). To the best of the Seller's knowledge, the Loan(s) are not subject to any valid right of rescission, set-off, abatement, diminution, counterclaim or defense that prevents enforcement by the Seller thereof or its assigns of the provisions of the Note(s) or Mortgage(s), or realization by the Seller thereof or its assigns against the Mortgaged Property of the intended benefits of such Mortgage and no such claims have been asserted as of the date hereof with respect to such Loan.

**6.2.4 Certain Schedule Information.** The statement of the principal balances for the Loan(s) set forth in Schedule A is true and correct as of the date of calculation.

. . .

**6.2.6 Review File.** With the exception of any Excluded Information, the Review File includes all material

documents in the possession of the Seller, or copies
thereof, relating to the Loan(s).

. . .

**6.2.9 Litigation.** To the best of the Seller's knowledge,
there is no litigation, proceeding or governmental
investigation pending, or any order, injunction or
decree outstanding, existing or relating to the Loan(s)
or Mortgaged Property.

(ECF No. 43-1 at PageID 71-72 (bold in original).)

This case specifically turns on the interpretation and legal
effect of the phrase "[e]xcept as otherwise disclosed in the Review
File or in publicly available records." First Horizon's position
is that Section 6.2 makes clear that the specific representations
and warranties are limited by that language, and that the Agreement
is not breached where contradictory information is found in those
specified sources. (ECF Nos. 85-1, 94, 99.) First Horizon
additionally suggests that Section 6.2 must be read in concert
with Section 6 as a whole. (ECF No. 94 at PageID 2302.)

In contrast, Amos argues that Section 6.2 and its subsections
are in conflict. According to Amos, Section 6.2 is a general
exculpatory provision, while Sections 6.2.3, 6.2.4, 6.2.6, and
6.2.9 are more specific; because these provisions are in conflict,
the more specific provisions control. (ECF Nos. 87-1, 97, 100.)
Amos further argues that the phrase "or in publicly available
records" only applies if First Horizon first disclosed those
records. (ECF No. 97 at PageID 2442.) Amos asserts that the

parties' communications and trade usage and common practice within
the debt acquisition industry further these interpretations. (ECF
No. 97 at PageID 2444; see also ECF No. 93-2 at PageID 2232
(Affidavit of Amos employee Nareg Korogluyan.)

The court finds that the language of Section 6.2 is
unambiguous in First Horizon's favor. The court finds that the
plain meaning of "[e]xcept as otherwise disclosed in the Review
File or in publicly available records" is that First Horizon's
warranties and representations are limited as to information
contained in the Review File it provided or any information
contained within public records. Accordingly, the information
contained within the Review File or publicly available records
overrides any contradictory information made by those
representations and warranties, such that there is no breach.
Moreover, the context of the Agreement, especially that Sections
6.2.3, 6.2.4, 6.2.6, and 6.2.9 come directly after Section 6.2,
makes clear that Section 6.2 limits those specific representations
and warranties. Per First Horizon's request, the court takes
judicial notice pursuant to Rule 201 of the Federal Rules of
Evidence that dockets and filings in bankruptcy proceedings are
public records.[37] Taylor v. Council on Quality & Leadership, No.

---

[37]Under Rule 201, "[t]he court may judicially notice a fact that
is not subject to reasonable dispute because it: (1) is generally
known within the trial court's territorial jurisdiction; or (2)
can be accurately and readily determined from sources whose

2:18-cv-02764-JTF-tmp, 2019 WL 2269919, at *2 (W.D. Tenn. May 28, 2019) (citing Kovac v. Superior Dairy, Inc., 930 F. Supp. 2d 857, 862-63 (N.D. Ohio 2013); Hamlin v. Baptist Mem'l Hosp., No. 2:09-cv-02615-STA-cgc, 2011 WL 902351, at *2 n.1 (W.D. Tenn. Jan. 27, 2011), report and recommendation adopted, 2011 WL 901028 (W.D. Tenn. Mar. 14, 2011)); see also In re Miller Energy Res. Sec. Litig., No. 3:11-CV-386-TAV-CCS, 2014 WL 415730, at *14 (E.D. Tenn. Feb. 4, 2014) ("A court 'may take judicial notice of pertinent matters of public record such as [a] bankruptcy order.'" (quoting Signature Combs, Inc. v. United States, 253 F. Supp. 2d 1028, 1041 n.5 (W.D. Tenn. 2003))). Amos also does not dispute that bankruptcy proceedings are public records. (ECF No. 95 at PageID 2321.)

Amos's contrary interpretation is unpersuasive for several reasons. First, Amos's preferred interpretation of the Agreement would ignore the words and context of Section 6.2, rendering it meaningless. This is contrary to how contracts are interpreted. Hyatt, 656 S.W.3d at 373 ("Tennessee law generally provides that contracts should not be interpreted in ways that render portions meaningless.").

Second, Amos's suggestion that Section 6.2 and its subsections conflict with each other is without merit. As discussed above, the plain meaning of Section 6.2 and its context qualify

accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

and specifically limit the provisions that come after it. None of this language conflicts.

Third, Amos's argument that Section 6.2 is a "general exculpatory clause" while Sections 6.2.3, 6.2.4, 6.2.6, and 6.2.9 are "specific" and thus controlling is inapposite. An example of general versus specific provisions can be found in one of the cases cited by Amos, Cocke County, 690 S.W.2d 231. That case involved a dispute between a county board of highway commissioners attempting to recover damages against the utilities board and a contractor for damages to roads in the performance of a contract to install sewage pipes. In resolving the cross-claim between the defendants on appeal, the Tennessee Supreme Court considered the applicability of a "general arbitration clause" versus a specific indemnification clause that required the contractor to indemnify the utility board for damages caused by the contractor. Id. at 236. The court found that the indemnification clause prevailed over the arbitration clause, in part because "[t]he indemnification clause specifically applies to litigation in which [the utilities board] is held liable for [the contractor's] damages to property," while the general arbitration clause "ha[d] no reference to litigation and judgments obtained against [the utilities board]." Id. at 237. In effect, those clauses provided different means for resolution of the disputed contract, one applying generally while the other applying to a specific scenario,

i.e., indemnification for damages caused by the contractor. In this case, by contrast, beyond there being no conflict between Section 6.2 and its subsections, Section 6.2 does not even provide a general exculpation of any nature,[38] but rather limits the applicability of the specific representations and warranties provided under that section in the Agreement.[39] Amos's further suggestion that the "exculpatory" language of 6.2 only applies to Section 6.2.5 also ignores its clear meaning and context.

Last, Amos's interpretation of "or in publicly available records" is without support. The plain meaning of the phrase does not suggest that First Horizon had to first disclose the existence of public records, and Amos provides no legal authority in support of this conclusion. To consider common trade usage or dealing here, as Amos suggests, would also run afoul of the principle outlined

---

[38]An exculpatory clause is one which limits a party's liability for negligence. See Olson v. Molzen, 558 S.W.3d 429, 430 (Tenn. 1977) (citing Moss v. Fortune, 340 S.W.2d 902 (1960)); see also Lomax v. Headley Homes, No. 02A01-9607-CH-00163, 1997 WL 269432, at *4 (Tenn. Ct. App. May 22, 1997) (citing Crawford v. Buckner, 839 S.W.2d 754, 755-56 (Tenn. 1992)) ("An exculpatory clause is one which deprives one party to the agreement of the right to recover damages for harm caused by the other party's negligence.").

[39]Amos belatedly argues that this language is not so clear and unambiguous such that it should be enforced. (ECF No. 97 at PageID 2443-44.) This argument is unavailing because Section 6.2 is not a general exculpatory clause, and Amos's suggestion that it is ambiguous places "[a] strained construction . . . on the language [] to find ambiguity where none exists." Lammert,  572 S.W.3d at 173.

in <u>Individual Healthcare</u> that extrinsic evidence "may not be used
to vary, contradict, or supplement the contractual terms in
violation of the parol evidence rule," 566 S.W.3d at 698, reading
in an additional duty on First Horizon's part. Moreover, Amos's
affidavit does not address how contracts that likewise include
"Review File" and "publicly available records" exceptions have
been interpreted in the debt acquisition industry. (<u>See</u> ECF No.
93-2 at PageID 2232.) Amos's position that it did not have to
review public records without prior disclosure also runs contrary
to the representations and warranties it made in Section 5.5 of
the Agreement that it "made such independent investigation as [it]
deem[ed] to be warranted." (ECF No. 43-1 at PageID 69.) Moreover,
Amos's reading would render this phrase surplusage, contrary to
basic contract interpretation. <u>See</u> <u>Hyatt</u>, 656 S.W.3d at 373.

Because the language of Section 6.2 specifically limits the
representations and warranties contained in its subsections, the
court must determine whether Amos has identified any evidence that
falls outside the Review File or publicly available records
exceptions.

   *ii.  Count I*

In Count I, Amos alleges that First Horizon violated Sections
6.2.3, 6.2.4, and 6.2.6 with respect to Loans 7192 and 8842 by
incorrectly representing that there were no defenses to
enforcement, listing the incorrect principal balance, and failing

to include certain documents in the Review File. In support, Amos relies on materials contained within the Review File for those loans, and in its motion for summary judgment Amos further alleges that First Horizon failed to include the document titled "Notice of Withdrawal of Motion for Relief from Stay (Doc. No. 229)," filed in In re: Curt A Schlager, No. 8:13-BK-01919 (Bankr. M.D. Fla. Dec. 3, 2020), ECF No. 260, in the Review File.

It is undisputed that the existence of bankruptcy proceedings in In re: Curt A Schlager and certain email communications related to Loans 7192 and 8842 were disclosed in the Review File and provided to Amos on November 30, 2020, prior to placing its bid, thus falling within the exceptions of Section 6.2. In any event, bankruptcy proceedings are publicly available records, and also fall within the exceptions of Section 6.2. Thus, the court concludes that no reasonable jury could find that First Horizon breached Sections 6.2.3, 6.2.4, and 6.2.6. of the Agreement because the materials Amos relies on were included in the Review File or could otherwise be found in publicly available records.

First Horizon's motion for summary judgment is GRANTED and as to Count I, and Amos's motion is DENIED.

*iii. Count II*

In Count II, Amos alleges that First Horizon breached Sections 6.2.3, 6.2.4, 6.2.6, and 6.2.9 of the Agreement with respect to Loan 1521 by incorrectly representing that there were no defenses

to enforcement, listing the incorrect principal balance, failing
to include certain documents in the Review File, and incorrectly
representing that there was no litigation regarding the loan. In
support, Amos relies upon records in the bankruptcy proceeding In
re: Kenneth Lee Brown, No. 8:11-bk-22028-KRM (Bankr. M.D. Fla. May
30, 2013), and, in its motion for summary judgment, it highlights
two documents it maintains should have been included in the Review
File, the aforementioned Little Correspondence, (ECF No. 90-24),
and the bankruptcy court filing titled "Motion to Approve
Compromise of Controversy by and between the Debtor, KLBrown of
Tampa Palms Professional Corp and Florida Bank," In re: Kenneth
Lee Brown, No. 8:11-bk-22028-KRM (Bankr. M.D. Fla. Apr. 19, 2012),
ECF No. 27.

    To the extent Amos relies on filings in In re: Kenneth Lee
Brown to establish that First Horizon breached the agreement, such
filings are publicly available records and fall within the
exceptions of Section 6.2.

    Regarding the Little Correspondence, First Horizon makes a
blanket argument maintains in its response that the documents Amos
relied on to establish a breach of Section 6.2.6 were all included
in the definition of Excluded Information, (ECF No. 94 at PageID
2305), but it did not specifically discuss the Little
Correspondence. Absent any detailed explanation by First Horizon,
it is not clear from the face of the document that it falls into

- 55 -

Excluded Information as an "internal memorand[um]" or an "officer comment[]." Thus, the court cannot conclude whether a reasonable jury could find that it qualified as Excluded Information.

However, the Little Correspondence contains a summary of information that can be found in publicly available court records. Moreover, in the bankruptcy proceedings, the parties agreed to settle, and the case was closed in 2013. To the extent the letter confirms that the settlement was paid in full in 2014, such information could be inferred from reviewing the docket for In re: Kenneth Lee Brown. Accordingly, the court concludes that a reasonable jury could only find that the information contained in the Little Correspondence fits within the publicly available records exception of Section 6.2. Because Amos relies only on publicly available records and information contained in those records, the court concludes that no reasonable jury could find that First Horizon breached Sections 6.2.3, 6.2.4, 6.2.6, and 6.2.9 with respect to Loan 1521.

First Horizon's motion for summary judgment is GRANTED as to Count II, and Amos's motion is DENIED.

  *iv.  Count III*

In Count III, Amos alleges First Horizon breached Sections 6.2.3, 6.2.4, 6.2.6, and 6.2.9 of the Agreement with respect to Loan 9149 by incorrectly representing that there were no defenses to enforcement; incorrectly representing that the loan was not

subject to valid rights of set-off, diminution, and/or defense;
listing the incorrect principal balance; failing to include
certain documents in the Review File; and incorrectly representing
that there was no litigation regarding the loan. In support, Amos
relies on records in the bankruptcy proceeding In re: Eduardo
Hormaza, No. 1-16-43630-nhl, (Bankr. E.D.N.Y. Nov. 17, 2016), and,
in its motion for summary judgment, it highlights two documents
filed in that case that First Horizon allegedly incorrectly
withheld from the Review File, titled "So Ordered Stipulation
Terminating the Automatic Stay as to Certain Collateral," No. 1-
16-43630-nhl, (Bankr. E.D.N.Y. Nov. 11, 2016), ECF No. 10, and
"Order of Discharge and Final Decree," No. 1-16-43630-nhl, (Bankr.
E.D.N.Y. Nov. 17, 2016), ECF No. 11.

Because Amos relies only on publicly available records in
bankruptcy proceedings, this falls within the exceptions to
Section 6.2. The court concludes that no reasonable jury could
find that that First Horizon breached Sections 6.2.3, 6.2.4, 6.2.6,
and 6.2.9 with respect to Loan 9149.

First Horizon's motion for summary judgment is GRANTED as to
Count III, and Amos's motion is DENIED.

v.   *Count IV*

In Count IV, Amos alleges First Horizon breached Sections
6.2.3, 6.2.4, 6.2.6, and 6.2.9 of the Agreement with respect to
Loan 7267 by incorrectly representing that there were no defenses

to enforcement; incorrectly representing that the loan was not
subject to valid rights of set-off, diminution, and/or defense;
listing the incorrect principal balance; failing to include
certain documents in the Review File; and incorrectly representing
that there was no litigation regarding the loan. In support, Amos
relies on filings in the bankruptcy proceeding In re: Kim Wayne
Smith, No. 14-50081 (Bankr. W.D. La. June 16, 2015), and in its
motion for summary judgment it identifies two documents it alleges
First Horizon withheld from the Review File, titled "Proof of
Claim", No. 14-50081 (Bankr. W.D. La. May 9, 2014), ECF Claim No.
3-1, and "Discharge of Joint Debtors", No. 14-50081 (Bankr. W.D.
La. June 2, 2014), ECF No. 27.

Because Amos relies only on publicly available records in
bankruptcy proceedings, this falls within the exceptions to
Section 6.2. Thus, the court concludes that no reasonable jury
could find that First Horizon breached Sections 6.2.3, 6.2.4,
6.2.6, and 6.2.9 of the Agreement with respect to Loan 7267.

First Horizon's motion for summary judgment is GRANTED as to
Count IV, and Amos's motion is DENIED.

    *vi.  Count V*

In Count V, Amos alleges First Horizon breached Section 6.2.4
of the Agreement with respect Loan 9969 by listing the incorrect
principal balance. In its motion for summary judgment, Amos
explains that, following closing, First Horizon provided a payment

history dated December 9, 2020, "which listed the principal balance
as $57,679.05 instead of $95,702.33," and that First Horizon did
not explain this discrepancy when asked for clarification. (ECF
No. 87-1 at PageID 387-88.) In Amos's response to First Horizon's
motion, it provided an additional statement of facts in which it
states the following:

> 8) On December 4, 2020, First Horizon received a $45,000
> payment on Loan 9969 (Count V).
>
> 9) On December 9, 2020, First Horizon reduced the
> principal balance on Loan 9969 as $57,679.05.
>
> 10) On or about December 14, 2020, First Horizon learned
> that the $45,000 payment on loan 9969 (Count V) had been
> returned for insufficient funds:
>
>> "As to Trime, the payment on 12/4 ($45,299.16)
>> was returned NSF so you need to take that out
>> of the calculations—that balance has
>> increased back to where it was previously."
>
> 11) First Horizon, to its financial benefit, amended the
> principal balance on Loan 9969 from $57,679.05 to
> $95,702.33 in the December 14, 2020 Closing
> Statement.:[sic]
>
> 12) Amos Financial had no knowledge or notice of the
> changes in the Loan 9969 principal balance until after
> the Closing.

(ECF No. 93-1 at PageID 2224-25 (footnotes omitted); see also ECF
No. 93-5 (email correspondence quoted discussing Loan 9969).)

Based on the evidence Amos has presented to the court, it
appears that First Horizon re-adjusted the principal balance for
Loan 9969 because the payment it received was insufficient.
However, First Horizon does not address this discrepancy in any of

its subsequent filings, (see ECF Nos. 94, 99), nor does Amos otherwise discuss this fact, (see ECF Nos. 95, 96, 97, 100). Additionally, the parties dispute whether Amos discovered the alleged incorrect balance before closing, and it is also not clear that providing the documents after closing fits into the Review File exception of Section 6.2.[40] Thus, the court finds that there is a genuine dispute of material fact, and both parties' motions for summary judgment are DENIED as to Count V.

*vii. Count VI*

In Count VI, Amos alleges First Horizon breached Section 6.2.6 of the Agreement by failing to produce all material documents as to Loan 4940. In its motion for summary judgment, Amos additionally alleges for the first time that First Horizon breached Section 6.2.3.[41] In support, Amos alleges that First Horizon failed to disclose the existence of two bankruptcy cases, In re: Razzano Personal Fitness Training, LLC, No. 20-10825 (Bankr. S.D. Ala. Apr. 6, 2021), and In re: Richard Anthony Razzano, No. 20-12049

---

[40]In its motion, First Horizon asserts that Amos "discovered [the correct balance] by reviewing documents provided in the Review File prior to the closing." (ECF No. 85-1 at PageID 343.) Amos flatly disputes this in its response, explaining that "[t]he payment history for Loan 9969 . . . was not provided to [Amos] until after the Closing." (ECF No. 97 at PageID 2457.)

[41]Though Amos did not allege this breach in its amended complaint, the court nonetheless finds that First Horizon did not breach Section 6.2.3 because it falls within the publicly available records exception.

(Bankr. S.D. Ala. Mar. 12, 2021), and in its motion for summary
judgment highlights two documents it alleges First Horizon
improperly withheld from the Review File, titled "Voluntary
Petition for Non-Individuals Filing for Bankruptcy," No. 20-10825
(Bankr. S.D. Ala. Mar. 16, 2020), ECF No. 1,[42] and "Proof of Claim,"
No. 20-12049 (Bankr. S.D. Ala. Sept. 4, 2020), ECF Claim No. 1-1.

Because Amos relies only on publicly available records in
bankruptcy proceedings, this falls within the exceptions to
Section 6.2. Thus, the court concludes that no reasonable jury
could find that First Horizon breached Sections 6.2.3 and 6.2.6
with respect to Loan 4940.

First Horizon's motion for summary judgment is GRANTED as to
Count VI, and Amos's motion is DENIED.

> ### viii.    Breaches of Sections 6.2.2 and 6.2.5, and the Implied Covenant of Good Faith and Fair Dealing

For the first time in its motion for summary judgment, Amos
asserts that First Horizon breached Sections 6.2.2 and 6.2.5 of
the Agreement with respect to the loans in Counts I through III,
and that First Horizon breached the implied covenant of good faith
and fair dealing. (ECF No. 87-1.) First Horizon urges the court
not to consider these claims because they were not alleged in the

---

[42]Based on Amos's exhibit, (ECF No. 90-38), and review of the docket
for the two identified cases, Amos misidentified this document
as having been filed in In re: Richard Anthony Razzano, (ECF No. 87-
1 at PageID 390), when it was actually filed in In re: Razzano
Personal Fitness Training, LLC.

Amended Complaint and the deadline to amend pleadings expired on
January 2, 2024. (ECF No. 94 at PageID 2300.) In its reply, Amos
contends that "[a] plaintiff may invoke the implied duty of good
faith and fair dealing in the context of explaining a breach of
contract cause of action." (ECF No. 100 at PageID 2467.) Amos
argues that it has "provide[d] detailed allegations regarding the
breach of contract cause of action," and that "First Horizon's
breach of the implied covenant of good faith and fair dealing is
an element of that breach of contract cause of action." (Id. at
PageID 2467-68.) Furthermore, Amos asserts that Federal Rule of
Civil Procedure 8(a)(2) "does not require inclusion of every legal
theory." (Id. at PageID 2468.)

    "Parties who seek to raise new claims at the summary-judgment
stage must first move to amend their pleadings under Federal Rule
of Civil Procedure 15(a) before asserting the claims in summary-
judgment briefing." Davis v. Echo Valley Condo. Ass'n, 945 F.3d
483, 496 (6th Cir. 2019) (citing Rafferty v. Trumbull Cnty., 758
F. App'x 425, 429 (6th Cir. 2018); Carter v. Ford Motor Co., 561
F.3d 562, 567-69 (6th Cir. 2009); Tucker v. Union of Needletrades,
Indus., & Textile Emps., 407 F.3d 784, 788 (6th Cir. 2005)). "By
that point, 'a plaintiff has conducted discovery and has had the
opportunity to amend the complaint and raise additional
theories.'" Id. (quoting West v. Wayne Cnty., 672 F. App'x 535,
541 (6th Cir. 2016)). The core of this rule is to provide notice

and protect defendants from "unfair surprise." Id. (citing M.D. ex rel. Deweese v. Bowling Green Indep. Sch. Dist., 709 F. App'x 775, 778 (6th Cir. 2017)).

The court finds that Amos's allegations regarding breaches of the implied covenant of good faith and fair dealing and Sections 6.2.2 and 6.2.5 of the Agreement were not pleaded at all in its Amended Complaint and therefore are not properly before the court. Amos's Amended Complaint contains a detailed accounting of each of the provisions of the Agreement that First Horizon allegedly breached, and it makes no mention of the implied covenant of good faith and fair dealing or Sections 6.2.2 and 6.2.5. Amos's allegations of breach of specific provisions of the Agreement did not put First Horizon on notice that Amos would then seek judgment for breaches on additional provisions, specific or implied, that were not raised. If Amos wanted to assert additional claims of breach, it had ample time to file a second amended complaint between filing its Amended Complaint on December 28, 2022, and the January 2, 2024 deadline to amend. Accordingly, the court DENIES Amos's motion for summary judgment on those theories.[43]

_____

[43]Furthermore, Amos relied exclusively on publicly available records in bankruptcy proceedings to establish a breach of the Agreement for Counts I through III, which, as discussed above, falls within the exceptions of Section 6.2. Thus, summary judgment would be denied on that ground.

*ix.  Counts VII-VIII*

Finally, in Counts VII and VIII of the Amended Complaint, Amos alleges that First Horizon failed to provide certain documents for several loans as part of closing in breach of Sections 4.1, 4.3, and 4.4 of the Agreement, requesting specific performance. (ECF No. 43 at PageID 55-62.) Regarding Count VII, in its motion, Amos asserts that First Horizon has not signed any of the requested documents. (ECF No. 87-1 at PageID 394.) In First Horizon's motion, however, First Horizon represents that "the claims in Count VII were addressed and resolved by counsel," and thus did not move for judgment on that count. (ECF No. 87-1 at PageID 326 n.1.) In Amos's response, it disputes that this issue has been resolved. (ECF No. 97 at PageID 2456.) The court finds there is a genuine dispute of material fact. Accordingly, Amos's motion for summary judgment is DENIED as to Count VII.

Regarding Count VIII, in its motion for summary judgment, Amos states that First Horizon has not provided the "Documents Requested," and points to the affidavits of one of its employees in support. (ECF Nos. 87-1 at PageID 394; 90-1 at PageID 1364-65.) First Horizon does not address this count in any of its substantive filings, but, in its response to Amos's Amended Statement of Undisputed Material Facts, it denies that it did not provide Amos with the "Documents Requested," and that it breached the Agreement. (ECF No. 96 at PageID 2436.) But First Horizon does not support

- 64 -

this denial with its own affidavit or highlight any other evidence in the record. Accordingly, the court finds that there is no genuine dispute of material fact that First Horizon breached Sections 4.1 and 4.3 of the Agreement. Thus, Amos's motion for summary judgment is GRANTED as to Count VIII.

### III. CONCLUSION

For the foregoing reasons, First Horizon's motion for partial summary judgment is GRANTED in part and DENIED in part, and Amos's motion for summary judgment is GRANTED in part and DENIED in part. Amos's claims are dismissed as to Counts I-IV and VI; it is granted judgment as to Count VIII; and its claims as to Counts V and VII will proceed to trial.

IT IS SO ORDERED.

s/Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

March 28, 2025
Date